Hulda Goodman *et al.* v. Henry Clyde Mal-
colm *et al.*

No. 49.

1. Conveyance — *recording, sufficient delivery to infant grantees, and title not divested by third person afterwards destroying.* Causing a deed made by a father to his minor children to be recorded, is a sufficient delivery to pass the title to the infant grantees, and a subsequent destruction of the deed by a third person will not divest the title thus conveyed or reinvest it in the original grantor.

2. ——— *reasonable provision for future wife retained, not fraud on marital rights.* The conveyance of two hundred acres of land by a father to his four minor children, and the retention of eighty acres in contemplation of a second marriage, especially where all the improvements are on the eighty acres retained, is not in itself a fraud upon the marital rights of a second wife.

3. ——— *in fee by life tenant does not work forfeiture.* The making by a life tenant of a conveyance purporting to convey the fee, does not work a forfeiture of the life tenancy.

4. Homestead — *may attach to life estate, but cannot exceed title upon which based.* A homestead right may be impressed upon lands held as an estate for life, but such homestead right cannot be greater in extent than the title upon which it rests.

5. Remainder-man — *life tenant permitting tax sale of land, may have receiver appointed.* As against the tenant for life who permits the estate to be sold for taxes, a remainder-man has a right to have a receiver appointed to receive rents and profits sufficient to redeem the land from such tax sale; and such right is not a mere matter of discretion with the court, and it is error to refuse it.

6. Landlord and Tenant — *tenant repudiating landlord's title, landlord may recover premises.* If a tenant distinctly repudiates his landlord's title and asserts one in himself, the tenant's holding becomes adverse and wrongful, and such repudiation entitles the landlord to an action to recover the land.

7. Dismissal Generally — *of action, bar to subsequent action having same object.* In an action to recover real estate and for partition thereof, where the title set up is controverted and the making and delivery of a deed set out in the petition is denied under oath, a judgment of dismissal generally, is a bar to a subsequent action having the same object in view.

8. Conveyance — *party cannot both deny execution and claim benefit under.* The defendant in this suit cannot deny the exe-

286 GOODMAN v. MALCOLM.

N. Dept.　　　　Opinion.　Mahan, P. J.　　　　5 Kan. App.

cution and delivery of the deed under which the plaintiffs assert title, and at the same time claim the benefit of the life estate created thereby in the husband.

9. CIVIL PROCEDURE — *court's refusal to determine issue as to validity of title, error in this case.* Under the issue joined in this case upon the pleadings, the plaintiffs had the right to insist upon a determination by the court of the validity of the title under which they claimed the land, and it was error for the court to refuse to make such determination.

Error from Geary District Court. Hon. James Humphrey, Judge. Opinion filed March 22, 1897. *Reversed.*

*Thomas Dever,* for plaintiffs in error.

*Jas. V. Humphrey,* for defendant in error, Luan Malcolm. *W. H. Laundy,* for defendant in error, Henry Clyde Malcolm.

MAHAN, P. J. The plaintiffs brought suit in the District Court of Geary County, alleging that their father, Jeremiah Malcolm, on June 22, 1877, conveyed to them and to their sister Jane Malcolm, deceased, certain lots of land in Geary County. They set out a copy of the deed and alleged, that their sister Jane died in infancy, without issue and unmarried, and that the father, Jeremiah Malcolm, took the undivided one-fourth interest by descent, upon the decease of the said Jane; that the land so conveyed comprised about 198 acres; that by the terms of the deed the said Jeremiah Malcolm, who at the time of the making thereof was a widower, reserved a life estate in said land to himself; that he afterwards intermarried with the defendant, Luan Malcolm, and after said marriage the plaintiffs and said defendants, Jeremiah and Luan Malcolm, mortgaged said land to the defendant, Provident Loan and Trust Company, to secure the sum of twelve hundred dollars borrowed by

the said Jeremiah for his own use; that on the eighteenth day of June, 1892, for the purpose of repaying said loan, the plaintiffs and their father Jeremiah and their stepmother Luan joined in a deed conveying to one Brown, about fifty acres of said land; that the money was used to discharge the indebtedness of the said Jeremiah; that it was agreed between them that the land so conveyed should be the entire interest that Jeremiah inherited from his daughter Jane; that the father remained in possession of the land, receiving the rents and profits under said reservation of a life estate, until the year 1893; that the rents and profits were of the value of two hundred dollars per annum; that about the month of June, 1893, Jeremiah made another deed conveying all of said land in fee to the infant son of Jeremiah and Luan, Henry Clyde Malcolm, and, immediately upon the making of said conveyance, abandoned the land, absconded, and his whereabouts became and were yet unknown to the plaintiffs; that in 1891 the land was sold for the unpaid taxes of 1890, and that the taxes for 1891, 1892 and 1893 were yet unpaid; that a tax deed would become due to the purchaser in September, 1894, after the beginning of this suit; that the amount of the delinquent taxes was $163.53; that, since the departure of their father, the defendant Luan Malcolm had been in possession and had received the rents and profits of the land.

The plaintiffs claimed in their petition that, by reason of the permitting of said land to be forfeited for taxes, the making of the conveyance to Henry Clyde Malcolm of a fee simple title, and by reason of his abandonment of said land, the life estate of Jeremiah Malcolm had become forfeited and extinguished; that the plaintiffs were the owners of the entire re-

288 GOODMAN V. MALCOLM.

N. Dept.        Opinion.    Mahan, P. J.        5 Kan. App.

maining estate not theretofore conveyed by them jointly, to wit, of about 148 acres; that their estate had become absolute, and that they were entitled to the possession and the rents and profits of the land.

In a second count of the petition they claimed to be the legal and equitable owners of the land as tenants in common, that they were entitled to the immediate possession of the land, and that the defendants, Luan Malcolm and Henry Clyde Malcolm, were wrongfully and unlawfully in possession of the land and unlawfully kept the plaintiffs out of possession. The plaintiffs prayed for possession; and that the Provident Loan and Trust Company might be required to establish and set up such right as it might have in the property; that the deed executed by Jeremiah to the infant, Henry Clyde, might be vacated and set aside so far as it affected the land in controversy; that the life estate of Jeremiah be decreed to be forfeited and extinguished; that the land be partitioned among the parties as their respective interests might appear, and that the defendants might, if found to have no interest therein, be barred from asserting any claim thereto; that a receiver be appointed during the pendency of the action, to take charge of the land, collect the rents and redeem the land from tax sale, and to preserve the estate for the benefit of the parties interested.

Luan Malcolm, answering the petition, denied that the deed set out in the first count of the petition was ever executed or delivered by the said Jeremiah Malcolm. As to the second cause of action, she averred that prior to the twentieth day of June, 1893, she was the wife of the defendant Jeremiah, and had ever since been such wife; she admitted that the taxes had not been paid since the year 1890; that the premises were

GOODMAN v. MALCOLM.                289

March 22, 1897.      Opinion.    Mahan, P. J.        C. Div.

sold for taxes in the month of September, 1891; and
that a tax deed would be due in the month of Septem-
ber, 1894, unless the premises should be redeemed.
She said she had been making arrangements to redeem
the land and believed that she would be able to pro-
cure the funds for such purpose before September,
1894. She alleged that the premises were, prior to
the twentieth day of June, 1893, the homestead of
herself and the said Jeremiah, and had been so ever
since, and that they had been occupied by the family
of the said Jeremiah long prior to the twentieth day
of June, 1893; that when Jeremiah departed he left
her in possession of the premises with direction and
authority to keep and manage them for the benefit of
herself and family; that she retained possession by
virtue of being the wife of the said Jeremiah, and that
Jeremiah was the owner in fee simple.

For a third defense she alleged that she was married
to Jeremiah on the twenty-second day of June, 1877;
that prior to, and at the time of, the marriage Jere-
miah promised her, as an inducement to enter into
the marriage relation with him, that all of the real
estate then owned by him should thereafter be owned
and held by her and the said Jeremiah in common;
that she married him upon this consideration; that
on the said twenty-second day of June, disregarding
his promise, he wrongfully and fraudulently made
this deed to the plaintiffs, and caused the same to be
recorded in the office of the register of deeds of Geary
County, where the land was situated; but that he still
retained exclusive dominion over the deed, and, be-
fore he had had an opportunity to deliver it to the
plaintiffs, she learned of the fraud, obtained posses-
sion of the deed, and in his presence destroyed and
burned it; that the said deed never was delivered to

19—5 KAN. APP.

290     GOODMAN v. MALCOLM.

N. Dept.     Opinion.   Mahan, P. J.     5 Kan. App.

the plaintiffs nor to any one for them; that prior to the making of the deed to Henry Clyde Malcolm, the land was the homestead of herself and her husband and Henry Clyde, and had been ever since; that she did not consent to the execution of said deed; that the said deed was a cloud upon the title of Jeremiah and herself as his wife.

In a third count she admitted that she withheld possession of the premises sued for in the action, but denied that the plaintiffs were entitled to the possession thereof, or to any right or title thereto. She prayed that the deed might be declared to be void; that the said Jeremiah might be declared to be the owner of said premises, and his title quieted against the claims of the plaintiffs; and that she might be decreed to have a homestead in said premises by virtue of being the wife of the said Jeremiah. This answer was verified.

A reply was filed, denying the new matter set out in the answer and alleging that, by reason of the fact that the defendant Luan in her answer had denied the title of the plaintiffs to the land in controversy, she had repudiated the title upon which the life estate of her husband was based; and that she had forfeited, and was estopped from claiming any homestead right in, the life estate of the said Jeremiah Malcolm in the land in controversy. The reply denied that the land had been the homestead of the family, but alleged that the homestead had been upon other lands, describing them, being adjacent lands amounting to eighty acres. The reply further alleged that the plaintiffs were the daughters of Jeremiah by his deceased wife, Mary, who died about the year 1872; that they and their deceased sister were all the children of the said Mary, and that their ages at the time the

deed was made were as follows :   Emma, seven years ;
Hulda, eleven years ;  Jane, seventeen years ;  Ardellas,
twenty years ;  that at the time the deed was made the
three younger sisters were living at home with their
father Jeremiah, and that he was their natural guard-
ian ;  that Jeremiah, in 1876, under the provisions of
the Homestead Act of Congress, took lots 1 and 2 in
section 18, and that that land had been the homestead
of the family ;  that all of the buildings were upon
said Government land ;  that immediately preceding
the marriage of the said Jeremiah and the said de-
fendant, they made and executed an antenuptial con-
tract, in writing, respecting their personal property
but not including any real estate, and that this was the
only antenuptial contract existing between them.

The plaintiffs further averred in their reply, that all
of the facts relied upon by the defendant Luan Mal-
colm were fully known to her more than sixteen years
before, and that if she ever had any cause of action in
respect thereto, the same was long since barred by the
Statute of Limitations.

Henry Clyde Malcolm, answering by his guardian
*ad litem*, first interposed a general denial to the alle-
gations of the plaintiff's petition ;  in a second defense
he alleged that the deed of June 20, 1893, was made
and delivered to him ;  that by the said deed Jeremiah
intended to convey to him, and he intended to receive,
only an estate determinable with the life of the said
Jeremiah and subject to the estate in remainder in the
plaintiffs, except as to an undivided one-fourth inter-
est in said real estate which he believed to be vested
in fee simple in his father by inheritance from his
father's daughter, Jane, and which was conveyed to
him by said deed.   Henry Clyde pleaded ignorance of

292 GOODMAN v. MALCOLM.

N. Dept.        Opinion.   Mahan, P. J.        5 Kan. App.

the matters set out in his mother's answer, but said that, if the court should find that the deed to the plaintiffs was a valid conveyance, subject only to a life estate reserved therein, he was willing the plaintiffs should be adjudged to be the owners of a fee in remainder on the demise of his father, of an undivided three-fourths interest in the land. He prayed that he might be decreed to be the owner in fee simple of an undivided one-fourth interest in the real estate, and the owner of a freehold estate in all of said real estate, determinable upon the demise of his father Jeremiah.

To this answer the plaintiffs replied by a general denial of all of the matters that were inconsistent with the facts stated in their petition; also denying that the deed to Henry Clyde was ever fully executed, and that it was ever delivered, and, in fact, that the defendant Henry Clyde ever acquired any interest thereby. The plaintiffs claimed, further, that because of the attempt of the father Jeremiah to deed a greater interest in the land than he owned — a greater interest than a life estate — he thereby forfeited his life estate. The case was heard by the court upon an agreed statement of facts and the evidence of the plaintiffs. During the progress of the trial, the defendant Luan Malcom announced to the court that she abandoned all claims to affirmative relief in the case, but relied upon all her allegations in her answer as matters of defense only. At the conclusion of the trial, the court dismissed the plaintiffs' petition, refused to appoint a receiver, and adjudged the plaintiffs to pay the costs. The plaintiffs filed a motion for a new trial in proper time, which was denied by the court, and judgment was entered as above.

March 22, 1897.    Opinion. Mahan, P. J.    C. Div.

The plaintiffs make the following assignments of error :

*First.* As to the admission and exclusion of evidence ; but counsel admits in his brief that this is immaterial and does not ask it to be considered. *Second.* That the court erred in holding that the plaintiffs were not entitled to any relief, and in dismissing their action. *Third.* The refusal to grant a new trial.

It is not disputed that Jeremiah executed and acknowledged the deed and had it recorded for the benefit of his minor children, reserving for his own use the eighty acres which he derived through the Homestead Act of Congress. There was no antenuptial agreement respecting this or any other land, but only respecting the personal property. Causing the deed to be recorded for the benefit of the minor children was a sufficient delivery as to all of the grantees. The conveyance of the land to the children was not a violation of the marital rights of the defendant Luan. The grantor did not convey away all of his property, and the proportion of it was not so great that it can be said that what he retained was not a reasonable provision for the wife Luan.

1. Recording conveyance sufficient delivery to infants.

2. Conveyance not fraud on marital rights, when.

The deed of June 20, 1893, by Jeremiah to his infant son, Clyde, did not work a forfeiture of his life estate reserved by his former deed. Counsel claims that it had this effect by force of the common law which is specifically adopted by a provision of our Code. In this he is mistaken. Under the common law it was only deeds of feoffment with livery of seizin that had the effect of forfeiting a life estate. It is a well settled doctrine of the common law that deeds of bargain and sale

3. Life tenant's conveyance in fee no forfeiture.

294          GOODMAN V. MALCOLM.

N. Dept.          Opinion.   Mahan, P. J.          5 Kan. App.

and deeds under the Statute of Uses never had this effect.

The destruction of the deed of conveyance, after delivery, did not in any manner affect the title ; did not reinvest the title in Jeremiah Malcolm. A life estate may be impressed with the homestead right under our

4. Homestead may attach to life estate.

Constitution and statutes ; and there is no doubt, from the evidence disclosed by the record, that eighty acres of the land in controversy in this case were so impressed by the actual occupancy thereof by Jeremiah Malcolm and his family, and that it became a part of the homestead in addition to the Government land to which it was adjacent. But this homestead right could not be greater in extent than the title of Jeremiah Malcolm, and a termination of his life estate would terminate the homestead right. This homestead right in the land was only a life estate and could not be parted with by the husband without the consent of the wife, any more than if he held the land in fee simple ; and, inasmuch as the deed of June 20, 1893, was not signed by Luan, the wife, it is void so far as it affected the homestead right in said land.

Luan Malcolm, in asserting her homestead right to the land, as the wife of Jeremiah Malcolm, refuses to recognize the estate of the plaintiffs or any right whatever in them to the land. She repudiates utterly the theory that this homestead is based upon a life estate, but contends that it is co-extensive with the fee and that the deed to the plaintiffs is void, and that she has a right of inheritance in the land, as the wife of Jeremiah Malcolm, which can only be defeated by her own acts conjointly with her husband. And while it is true that, in the course of the trial, she announced to

the court that she abandoned all claim to affirmative relief as prayed for in her answer—quieting her title, or the title of her husband, and consequently her homestead right in the land as of a fee simple title— yet she retained the right to insist upon every matter alleged in her answer as a defense to the claims of the plaintiffs.　This is what the judgment says :

" The defendant, Luan Malcolm, in open court announced that she abandoned all matter pleaded by her upon which she asked affirmative relief, and would stand upon such matters, as constituting a defense to the affirmative matters pleaded by the plaintiffs.　Whereupon, the court ruled that the position taken by the defendant Luan Malcolm left nothing for the court to consider, except the application for a receiver.''

It is recited in the judgment that the plaintiffs insisted that the validity of the deed under which they claimed was properly triable, and that the validity of the deed should be determined ; but the court denied the request to pass upon the validity of the deed, or either of the deeds.　The plaintiffs then asked the court to hold and adjudge that the deed under which they claimed as against the defendant Luan Malcolm, was a good and valid deed, which the court also refused to do.　The court then, after having considered the evidence, found, not that the taxes had been paid, but " that sufficient assurance is given that the taxes will be paid, and that no cause exists for the forfeiture of the life estate of Jeremiah Malcolm ;'' and thereupon denied the application for a receiver and adjudged the plaintiffs' action to be dismissed, not without prejudice to any future claim that they may make under the deed, but dismissed the case absolutely, with prejudice to any future suit respecting the matter involved in the case.　Upon the pleadings,

aside from the claim for affirmative relief on the part of Luan Malcolm, was not the validity of the deed from Jeremiah Malcolm to these plaintiffs in issue? Was it not so involved in the case that the dismissal of the action of the plaintiffs without any reservation whatever is conclusive upon the rights of the plaintiffs under the deed?

It is a well settled principle that a remainder-man has a right, in case the life tenant shall fail to pay the taxes for such a time as is liable to forfeit the entire estate, to have a receiver appointed to collect the rents and profits of the land with which to discharge the taxes, and to have his title preserved thereby. And this seems to be the situation in this case. This case was tried and determined on the first day of May, 1894. In the first part of September, 1894, a tax deed would issue for this land to the purchaser at the tax sale; and yet the court found that the defendant, Luan Malcom, had given assurance that she would pay the taxes, and upon that assurance the court dismissed the case and adjudged the plaintiff to pay the costs.

*5. Remainder-man may have receiver appointed, when.*

It is true that there was no evidence in this case that Jeremiah Malcolm was dead; the life tenancy had not expired or terminated by reason of his death. He was not in possession, is not present claiming possession. Had he been present and had he made the same defense that his wife Luan made in the case, namely, that this deed never was delivered, that it was invalid, that the plaintiffs had no right to or interest in the land whatever, present or prospective, could it be said that there was no issue presented which the court was bound to try? that the plaintiffs were not entitled to any relief unless the defendant Malcolm asked relief affirmatively?

The plaintiffs insisted that the court adjudicate these matters between them and the defendant, Luan Malcolm. To this the court replied as follows: "Which the court declines to do, for the reason that counsel for the defendant withdraws these matters from the consideration of the court." To this ruling the plaintiffs excepted. Again, the court said:

"It is not claimed that Jeremiah Malcolm is dead, nor is it shown that Mrs. Malcolm has committed waste. If the plaintiffs have any rights by virtue of the deed under which they are claiming, those rights cannot be affected by any claims that Mrs. Malcolm may make during the life of Jeremiah Malcolm, and therefore it is not necessary to consider, at this time, just what the legal effect of the deed under which the plaintiffs are claiming is; and the court will not consider it."

To this ruling of the court the plaintiff again excepted.

Common law, as declared by the United States Supreme Court and several of the states, including Kansas, is that if a tenant, without regard to the character of his tenancy, repudiates or disclaims the title of his landlord under which he holds possession, that act works a forfeiture of the leasehold estate and the landlord may have ejectment. *Willison v. Watkins*, 3 Pet. 43; *Walden v. Bodley*, 14 id. 156; *Zeller's Lessee v. Eckert*, 4 How. 289; Taylor's Landlord and Tenant, § 522. This rule is recognized by our Supreme Court in *Douglas v. Anderson*, 32 Kan. 350.

> 6. Tenant repudiating landlord's title, landlord may recover premises.

Another serious difficulty, as to the effect of this judgment upon any subsequent claim of a like character by these plaintiffs or their heirs or assigns, presents itself. In *Walden v. Bodley*, cited above, on page 161, Mr. Justice McLean says: "A decree dismissing

**7. Dismissal generally, bar to subsequent action.** a bill generally, may be set up in bar of a second bill, having the same object in view.'' The object of the petition in this case was to assert the plaintiffs' right and title, under the deed from their father, to recover possession of the land and for partition. The assertion is that the deed was duly executed and delivered; this was denied under oath, which makes a clear, fair issue under our statute; and simply upon the statement that the defendant abandoned all claim for the affirmative relief prayed for in her answer and cross-petition, the petition is dismissed generally. There is no doubt as to the effect of this judgment.

Again, the defendant, Luan Malcolm, having asserted an adverse right to the land and being in possession, is sufficient under the authorities cited above to set the Statute of Limitations running against the plaintiffs; and if the judgment is to stand, and with it the rule of the court below that the plaintiffs have no cause of action and can have none until such time as their father Jeremiah shall have deceased, if he should live until the expiration of the period of fifteen years from the date of this adverse declaration by the defendant, Luan Malcolm, the plaintiffs would be barred from all estate in the land. In the same case Mr. Justice McLean again says, page 162:

''If a tenant disclaims the tenure, and claims the fee in his own right, of which the landlord has notice, the relation of landlord and tenant is put an end to, and the tenant becomes a trespasser, and he is liable to be turned out of the possession, though the period of his lease has not expired.''

And the same is substantially held by the court in *Willison v. Watkins*, supra (p. 47), and by a number of other highly respected authorities.

The questions arising are not to be resolved by any statutory rules, but are to be resolved entirely by the rules of the common law; and, as to what our common law is, the writer of this opinion knows no better authority than that of Marshall, Story and McLean. The defendant in error, Luan Malcolm, did not elect, in presenting her issues in the case, to stand upon her rights as the wife of Jeremiah as a life tenant of the land, but repudiated the deed by which this life tenancy was created and asserted an adverse and hostile title to the land and her right of possession thereunder. And it was this issue that the court had to try; and it was upon these allegations that the respective rights of the plaintiffs and the

8. Party cannot both deny execution of conveyance and claim under.

defendant, Luan Malcolm, had to be measured by the court; and the defendant cannot in this case claim an adverse title, and, in case she fails in that, fall back upon the tenure which she repudiates.

The conclusion follows that the court erred in refusing to hear and determine the rights of the

9. Court's refusal to determine issue error in this case.

plaintiffs and the defendant, Luan Malcolm, upon the issues joined between them upon the pleadings. And the court erred again in acting upon the assurance of the defendant, Luan Malcolm, that she was able, and would pay, the taxes upon this land. The plaintiffs had a right as remainder-men, and a right which the court could not refuse without error, to have a receiver to take sufficient of the rents and profits of the land to discharge the tax lien and preserve the estate intact for them, and the court had no authority to deny them that right upon the mere assurance that, at some time in the future and before the ripening of the tax title, the defendant Luan would do that

which it was the court's duty to see was done through the means provided by law in case Jeremiah Malcolm or his assigns did not do it.

It was error also for the court, in any event, even though the taxes had been paid, to dismiss the petition with prejudice to another action, at the cost of the plaintiffs. The action was rightfully begun. The plaintiffs were entitled to some of the relief for which they asked, at least; and the judgment of dismissal, if made at all, should have been so modified as to have protected the plaintiffs in their right to assert the title under this deed in any future action which they might rightfully bring after the termination of the life estate by its terms, as provided in the deed.

The judgment is reversed, and the case remanded to the lower court with directions to grant a new trial.