Argued 22 December, 1902; decided 26 January, 1903.

### ABERNETHY *v.* ORTON.

[71 Pac. 327.]

RELATIVE JURISDICTIONS OF LAW AND EQUITY.

1. In Oregon courts of law and equity have separate jurisdictions, and where there is a law remedy an equitable proceeding must be dismissed.

DUTY OF LIFE-TENANT TO PAY TAXES—PAYMENT BY REMAINDERMAN.*

2. It is the duty of a life-tenant to pay the current taxes if the estate is sufficient for that purpose; and if another is compelled, for his own protection, to pay taxes which the life-tenant should have paid, he may recover the amount so expended.

---

*NOTE.—On this subject see note, Duty of Life Tenant to Pay Taxes, 32 L. R. A. 744.

See, also, Reversioners and Remaindermen, 14 Am. St. Rep. 628; and The Effect on Estates in Reversion or Remainder of Tax Sales During the Existence of a Life Estate, 33 L. R. A. 688.                    REPORTER.

WASTE BY NOT PAYING TAXES—EQUITY JURISDICTION.

3. The refusal of a life-tenant to pay current taxes, although the rental value of the premises is sufficient for that purpose, and his permitting the land to be sold for taxes, constitute waste, and, under Section 390, B. & C. Comp., providing that the enforcement of a right shall be by a suit in equity in all cases where there is not a plain and adequate remedy at law, and may be obtained in cases where equity has been used to exercise concurrent jurisdiction, equity has jurisdiction of a suit by a remainderman against a life tenant to recover taxes paid to prevent the sale of the property, and to declare the amount so paid a lien on the life tenant's estate, and for the appointment of a receiver to collect the rents and pay future taxes.

BURDEN OF PROOF.

4. A party affirmatively alleging a fact as a cause of action or defense has the burden of proof in support of his allegation.

From Yamhill:. HENRY H. HEWITT, Judge.

This is a suit by C. H. Abernethy and others against Iri Orton to impress a lien upon an interest in real property. The transcript shows that on January 24, 1891, the defendant, Iri Orton, for the expressed consideration of $500, executed to his daughter, Elizabeth A. Abernethy, a deed conveying the S. ½ of the donation land claim of John J. and Elmira J. Davis, in Yamhill County, Oregon—reserving to himself, however, a life estate therein—of which premises he has at all times since said date had the exclusive possession. Mrs. Abernethy, on December 31, 1892, conveyed her interest in said land to the plaintiffs, her sons, C. H. and Guy V. Abernethy, and her daughter, Mattie E. Eldridge. The defendant having refused to pay any part of the state, county, school, or road taxes levied upon said real property, the sums so levied were paid the respective years succeeding the levy thereof as follows: By Mrs. Abernethy, July 1, 1892, $36.38; and by the plaintiffs, July 1, 1893, $62.45; April 3, 1894, $31.35; July 1, 1895, $32.05—the taxes of the latter year, $38.55, remaining delinquent October 7, 1896, when this suit was instituted. The complaint, having set out the facts hereinbefore stated, further alleges, in substance, that, to prevent a sale of the property, Mrs. Abernethy and the plaintiffs were compelled to pay said taxes, and that prior to the commencement of this suit, she assigned to plaintiffs all her interest in the sum paid by her; that plaintiffs made demand of defendant for the several sums so paid, but he refused to

comply therewith, declaring that he intended to let the premises be sold for the delinquent taxes, and purchase the same for his own use, so as to defeat their interest therein; that the premises consist of a productive farm worth about $5,000, the annual rental value of which greatly exceeds the taxes yearly imposed thereon; and that plaintiffs have no plain, adequate, or complete remedy at law for the redress of their said grievances. The prayer is for the recovery of the sums so paid, with interest at the rate of 8 per cent per annum from the several dates of payment; that the amount thereof may be decreed to be a lien on the defendant's interest in said land, and that said interest may be sold to satisfy the same; that a receiver be appointed to take charge of and rent the property, pay the taxes thât may be hereafter imposed thereon, keep the premises in repair, and retain the costs and expenses incurred by him, paying the remainder to the defendant; and for such other and further relief as to the court may seem just and equitable. A demurrer, interposed on the grounds that the court did not have jurisdiction of the subject matter, and that the complaint did not state facts sufficient to constitute a cause of suit, having been overruled, an answer was filed, denying the material allegations of the complaint and averring that defendant, in consideration of $500 and the payment of all taxes that might thereafter be imposed, executed said deed to his daughter, with the mutual understanding that he was to occupy the premises during his natural life, free from the payment of any impositions thereon, and that she and her successors in interest would pay all such taxes, and that at the time she convyed her interest in the property to plaintiffs they had knowledge of such agreement, acquiesced therein and agreed thereto. The reply, having denied the material allegations of new matter in the answer, a trial was had, resulting in a decree as prayed for in the complaint, and defendant appeals.

AFFIRMED.

For appellant there was an oral argument and a brief by *Mr. John J. Spencer* and *Mr. George G. Bingham,* to this effect:

I. In this state law and equity are separate, and equity

courts are without jurisdiction of matters as to which courts of law afford a plain, speedy and adequate remedy: Hill's Ann. Laws, § 380; *Phipps* v. *Kelly*, 12 Or. 213 (6 Pac. 707); *Love* v. *Morrill*, 19 Or. 545, 549 (24 Pac. 916).

II. When it is the duty of the holder of a life estate in land to pay a duly levied tax, and he refuses to pay it, and the remainderman is compelled to pay it to prevent a sale of the land, the person so paying can maintain an action of assumpsit against the life-tenant to recover the amount of the tax as money paid at the request of the life-tenant, the request being implied: 2 Greenleaf, Ev. (14 ed.), § 108; Chitty, Contracts (11 Am. ed.), 883; Desty, Tax'n (1 ed.), 800; 2 Ency. Pl. & Pr. pp. 1012 and 1013; *Keith* v. *Parish of Easton*, 21 Pick. 261, 262; *Mason* v. *Smith*, 131 Mass. 510, 511; *Hale* v. *Huse*, 10 Gray, 99, 102; *Nicholas* v. *Bucknam*, 117 Mass. 491; *Sargent* v. *Currier*, 49 N. H. 310 (6 Am. Rep. 524); *Exall* v. *Partridge*, & T. R. 308; *Norton* v. *Colgrove*, 41 Mich. 544 (3 N. W. 159); *Hales* v. *Freeman*, 1 B. & B. 391; *Fasler* v. *Ley*, 2 Bing. N. C. 268; *Bailey* v. *Bussing*, 28 Conn. 455, 460; *Damson* v. *Linton*, 5 B. & Ald. 521; *Pownal* v. *Farrand*, 6 B. & C. 429.

III. A person who voluntarily pays another's taxes cannot compel such other person to reimburse him therefor: Cooley, Tax'n (1 ed.), 566, 567; 18 Am. & Eng. Enc. Law (1 ed.), 214; *Montgomery* v. *Cowlitz County*, 14 Wash. 230 (44 Pac. 259); *Hopkins* v. *City of Butte*, 16 Mont. 103 (40 Pac. 171); *Leigh Coal Co.* v. *Brown*, 100 Pa. St. 338.

IV. It is not claimed that defendant is insolvent or that a judgment for the unpaid taxes cannot be collected; and where there is an adequate remedy at law a receiver should not be appointed in equity: High, Rec. §§ 10, 11; *Sollory* v. *Leaver*, L. R. 9 Eq. 22; *Parmly* v. *Tenth Ward Bank*, 3 Edw. Ch. 395; *Corey* v. *Long*, 43 How. Prac. 497; *Rice* v. *St. Paul & Pac. R.* *Co.* 24 Minn. 464.

For respondents there was an oral argument by *Mr. James McCain*, with a brief over the name of *McCain & Vinton*, to this effect:

I. Where a life estate exists in real property, with the re-

mainder over, the burden of taxation rests upon the life tenant: 25 Am. & Eng. Enc. Law (1 ed.), 281; 1 Washburn, Real Prop. p. 96; *Olleman* v. *Kelgor,* 52 Iowa, 40 (2 N. W. 612); *Holcomb* v. *Holcomb,* 29 N. J. Eq. 600; *Cadmus* v. *Combs,* 37 N. J. Eq. 264; *Cannon* v. *Barry,* 59 Miss. 281; *Parker* v. *Baxter,* 2 Gray, 185; *Garland* v. *Garland,* 73 Me. 97.

II. As remaindermen, the plaintiffs had such an interest in the realty in question as entitled them to pay the taxes levied and assessed against the same, upon the life-tenant's failure to do so, and to be subrogated in equity to the rights of the county to collect such tax: *Lillie* v. *Case,* 54 Iowa, 177-182 (6 N. W. 254); 25 Am. & Eng. Enc. Law (1 ed.), 279-280; *Sidenberg* v. *Ely,* 90 N. Y. 257 (43 Am. Rep. 163). And as the defendant declared his intention to continue in his refusal to pay them and to permit the land to be sold therefor, the plaintiffs need not wait for such taxes to become delinquent and expenses added before making such payment.

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. It is contended by defendant's counsel that plaintiffs had a plain, speedy, and adequate remedy at law for the recovery of the taxes paid by them, and, this being so, a court of equity had no jurisdiction of the subject-matter, and that the demurrer interposed on that ground should be sustained. In this state, though the same judge presides over courts of law and of equity, they are separate tribunals; and the rule is settled by repeated adjudications that when the right involved is of such a character that a court of law is authorized to take cognizance of it and to afford a plain, adequate, and complete remedy, the general principle is that the plaintiff must enforce such right at law: B. & C. Comp. § 390; *Phipps* v. *Kelly,* 12 Or. 213 (6 Pac. 707); *Ming Yue* v. *Coos Bay R. Co.* 24 Or. 392 (33 Pac. 641); *Willis* v. *Crawford,* 38 Or. 522 (63 Pac. 985, 64 Pac. 866, 53 L. R. A. 904).

2. It is the duty of the tenant for life to keep the current taxes paid, if the estate is sufficient for that purpose (25 Am. &

Eng. Enc. Law, 1 ed. 281), and when any other party, on his default, is compelled to pay such taxes to protect his own interests, he has a remedy over for the recovery of the amount so paid: *Cairns* v. *Chabert,* 3 Edw. Ch. 312; *Deraismes* v. *Deraismes,* 72 N.Y. 154; *Sidenberg* v. *Ely,* 90 N. Y. 257 (43 Am. Rep. 163). "Where the plaintiff," says Mr. Chitty in his work on Contracts (volume 2, 11 Am. ed. 883), "is compelled to pay the defendant's debt, in consequence of his neglect or omission so to do, the law infers that the defendant requested the plaintiff to make the payment for him, and gives him the action for money paid." In *Norton* v. *Colgrove,* 41 Mich. 544 (3 N. W. 159), it was held that payment by a grantee, for his own protection, of incumbrances which the grantor had bound himself to pay, was compulsory, and would support an action for money paid to the grantor's use on an implied promise to repay it. Mr. Justice COOLEY, speaking for the court, in deciding the case, says: "If the defendant was charged with the duty to make payment, but neglected to do so, and plaintiff was compelled to pay for the protection of his own interest, the law will imply a promise to repay."

3. If neither Mrs. Abernethy nor the plaintiffs agreed to pay the taxes, the duty of discharging them would necessarily devolve upon the defendant, it being admitted that the annual rent of the premises exceeded the yearly taxes; but if he made default therein and the plaintiffs were compelled to pay them in order to protect their interests in the premises, they could recover the sums so paid in an action at law based upon the defendant's request, which the law would imply; and, if the recovery of the taxes so paid is the only right involved, it is quite probable that plaintiffs had a plain, adequate, and complete remedy at law. In *Wade* v. *Malloy,* 16 Hun, 226, it was held that where a tenant for life of certain land willfully neglects to pay the interest accruing upon a mortgage thereon, to the end that the same may be foreclosed and the land sold, and such sale is accordingly had, an action lies against the tenant for life by the remainderman to recover the damages he has sustained by reason of such neglect. Mr. Justice DYKMAN, in rendering

the decision, says: "It is a general rule, applicable to this case, that, where there is an incumbrance upon the whole land, and there is an estate in the land for life, and a remainder in fee, the life tenant is bound to pay the interest on the incumbrance during the continuance of his estate: 4 Kent, Comm. 74. In this case there were no equities between the parties preventing the application of this general rule of law, and it was a duty the defendant owed to the plaintiff to keep down the interest on the mortgage, as he was under obligations to her to commit and permit no waste upon the premises. These duties were imposed upon him by operation of law, in the relation he sustained toward the plaintiff. He was bound to see to it that he was not guilty of waste, either voluntary or permissive, and he was also bound to take proper care to prevent deterioration and decay: Gerard, Titles, 154, and cases cited. If he was guilty of any of these forbidden acts, he rendered himself liable to respond in damages. Waste is the deherison of the remainderman or reversioner: *Livingston* v. *Reynolds,* 26 Wend. 122. 'Deherison' is defined to be disinheriting, a depriving or putting out of an inheritance (Burrill, Law Dict.); and the old writ of waste called upon the tenant to appear and show cause why he had committed waste and destruction in the place named, to the deherison of the plaintiff: 3 Bl. Com. 228. It thus appears that any act or omission of the tenant which deprives the person in remainder or reversion of the inheritance is waste." In *Clark* v. *Middlesworth,* 82 Ind. 240, the court, commenting upon the principle thus announced, said: "If, through the failure of the tenant to pay the taxes, if the income of the estate is sufficient to discharge them, the estate is sold and conveyed to another, beyond the power of the remainderman to recover it, it is, as to him, destroyed, wasted, and the inheritance gone; and the tenant should pay for the lot."

In *Phelan* v. *Boylan,* 25 Wis. 679, it was held that a tenant for life who neglects to pay taxes after his tenancy commences is liable to an action for waste; Mr. Chief Justice DIXON saying: "And in this case the plaintiffs might have sued under the statute, and obtained judgment for double the amount of

damages found by the jury: Rev. St. c. 143, §§ 1 to 6, inclusive. But in *Cairns* v. *Chabert,* 3 Edw. Ch. 312, a bill in equity was sustained against the tenant for life to restrain the disposition of property and to compel the tenant to keep down assessments and taxes; and upon motion an order was entered for the appointment of a receiver of so much of the rents and income of the estate as should be necessary to pay off the taxes in arrear, unless within forty days from service of a copy of the order the tenant should show to the satisfaction of the master that the taxes had been paid. It would seem from this that the nonpayment of taxes by the tenant constitutes substantive ground for relief in equity, notwithstanding the remedy at law to recover damages for waste. And there may be good reason for this. The remedy at law may be, and no doubt is, inadequate. The tenant may be insolvent or other circumstances exist rendering the judgment for damages of no value.'' In *Murch* v. *Smith Mfg. Co.* 47 N. J. Eq. 193 (20 Atl. 213), it was held that if a tenant for life refuses to keep down the taxes or to make repairs which he is legally bound to do, a receiver would be appointed to collect the rents sufficient in amount to discharge the liabilities of the tenant's estate for which they are answerable. In *St. Paul Trust Co.* v. *Mintzer,* 65 Minn. 124 (67 N. W. 657, 32 L. R. A. 756, 60 Am. St. Rep. 444), a life-tenant in a homestead estate having neglected and refused to pay taxes or make repairs thereon for many years, in order to save the estate from entire loss to the reversioners the taxes were paid by the administrator with the will annexed, having power so to do by the express terms of the will; and it was held by the Supreme Court of Minnesota that such administrator might proceed in equity to have a receiver appointed to take charge of the premises, collect the income or rentals of the property, and apply the proceeds to the payment of the taxes and necessary expense of repairs, and reimburse the administrator for such taxes and expenses so paid, and also pay from such income any unpaid taxes or expense for repairs necessarily made to save the property, and that, if such rental is insufficient the receiver may, under authority and direction

of the trial court, proceed to sell the life estate of the defendant in the premises, or so much thereof as may be sufficient for such purpose. ·

The cases to which attention has been called proceed upon the theory that the neglect or refusal of the tenant for life to pay the current taxes, whereby the interest of the remainderman in the premises is in danger of being forfeited, constitutes waste (28 Am. & Eng. Enc. Law, 1 ed., 890), going to the destruction of the estate, to prevent which equity will intervene, and by the appointment of a receiver subject the rents and profits to the payment of the delinquent taxes. The defendant having refused to pay the current taxes, although the rent received by him was sufficient for that purpose, the plaintiffs were compelled to discharge them to protect their interests in the premises; and as such refusal constituted waste, jeopardizing the estate, and tended to its destruction, equity for that reason had jurisdiction of the subject-matter, and no error was committed in overruling the demurrer.

4. We think it useless to quote from or comment upon the testimony relating to Mrs. Abernethy's alleged agreement to pay the taxes, the burden of proving which was imposed upon the defendant under the allegations of his answer. The deed executed by him to his daughter did not contain any stipulation in respect to the payment of taxes, which leads us to believe that no contract to that effect had been consummated; otherwise it would have been incorporated in the conveyance. But, however this may be, a careful examination of the testimony leads us to conclude that the court reached a proper conclusion upon this question.

Other errors are assigned, but, deeming them unimportant, the decree is affirmed.                                   AFFIRMED.