Argued at Pendleton November 1; affirmed November 29, 1938

## HARRIS ET AL. *v.* HARRIS ET AL.

(84 P. (2d) 500)

*George R. Lewis,* of Pendleton, for appellants.

*Homer I. Watts,* of Athena (S. D. Peterson, of Milton, on the brief), for respondents.

BELT, J. On January 31, 1928, Higby Harris, a wealthy pioneer farmer of Umatilla county, Oregon, died testate, leaving surviving him, as heirs and next of kin, his widow, Laura Harris, and four children, Martha, Mabel, David and Ernest. Higby's estate, which was free of debt, included the home place of 1,266.26 acres and three other tracts of land. The will, so far as material herein, provides as follows:

## "II.

"After payment of debts and funeral expenses, and expenses of last illness, I give, bequeath, and will to my wife Laura Harris one-half of the income from the home place, where we are now living.

## "III.

"All the rest, residue, and remainder of my property, whether personal, mixed or real property, of every kind and description, I give, devise, and bequeath unto my children, David Harris, Ernest Harris, Martha Harris, Mabel Harris, and my wife Laura Harris, share and share alike, that is to say that my son David Harris is to have one-fifth of such remainder of my estate, my son Ernest Harris is to have one-fifth of such estate; my daughter Martha Harris is to have one-fifth of said estate, and my wife the said Laura Harris is to have one-fifth of said estate, this paragraph has reference to the estate remaining over after the provision made in paragraph II hereof and expenses of administration are provided for."

The estate was duly administered and distributed and the devisees executed a deed confirming their estates in keeping with the provisions of the will. The deed recited that:

"The intention of this conveyance is that from and after the execution thereof the said Laura Harris shall be entitled to one-half of the income for the term of her natural life from the hereinabove described lands,

and the said David Harris, Ernest Harris, Martha Harris, Mabel Harris and Laura Harris shall each be entitled to and hold an undivided one-fifth interest in said property, subject to such right of the said Laura Harris to one-half of the income therefrom for the term of her natural life.''

Thereafter, in December, 1929, Ernest Harris and his wife commenced a suit against his co-devisees to have the land devised to them partitioned. On appeal (*Harris v. Harris*, 138 Or. 243 (6 P. (2d) 230, 85 A. L. R. 1318), it was held that, in view of the terms of the will giving to Laura Harris one-half the income from the home place for the term of her natural life, the land could not be partitioned without great prejudice to the owner.

In December, 1932, the Milton Warehouse Company commenced a suit to require the devisees and their successors in interest to interplead and show what interest, if any, they had in certain wheat raised on the "home place" of the Higby Harris estate and which had been stored with the warehouse company by Sam Ingle who had rented the place in 1931. There was a controversy as to the respective interests of the parties in the wheat and the determination of such question hinged upon the construction of the will. In that case the widow contended, and the court on appeal so held (*Milton Warehouse Co. v. Basche-Sage Hardware Co. et al.*, 147 Or. 563 (34 P. (2d) 338, 978)), that she was the owner in fee simple of one-fifth of all the land devised by Higby Harris in addition to the one-half of the income of the home place. Otherwise stated she had a five-tenths interest in the wheat grown on the home place plus one-fifth of the remaining one-half in all the property, amounting to a six-tenths interest in the wheat in storage in the warehouse. There was no con-

troversy between the widow and her two daughters. The Basche-Sage Hardware Company, being the successor in interest to Ernest Harris, and the successor in interest to David Harris each claimed a one-eighth interest, but the court held on appeal that each of them had only a one-tenth interest. Mr. Justice BEAN, speaking for the court, in construing the will held that Laura Harris had a life estate in one-half of the income of the "home place" and that, by reason of such interest, she was obligated to "keep the taxes on the land paid, if the estate is sufficient for that purpose," citing in support thereof *Moore v. Simonson*, 27 Or. 117 (39 P. 1105), and *Abernethy v. Orton*, 42 Or. 437 (71 P. 327, 95 Am. St. Rep. 774). That the conclusion relative to the nature of the estate held by Laura Harris is correct, see also *Thomas v. Owens*, 131 Ga. 248 (62 S. E. 218); *Allen v. Stewart*, 214 Mass. 109 (100 N. E. 1092); *Cavan v. Woodbury*, 240 Mass. 125 (133 N. E. 95); *Morss v. Morss,* 145 N. Y. S. 1068, cited by respondent in the partition suit (*Harris v. Harris,* supra).

In October, 1935, the plaintiffs who are the successors in interest of David Harris and Ernest Harris, commenced the present suit to have a receiver appointed to manage and operate the farm in question and to compel the defendants to account for certain rents, issues and profits. The trial court very properly denied the application for appointment of a receiver and, since neither side has appealed from that part of the decree, we need not be concerned with that phase.

Relative to the matter of accounting it appears from the record that ever since the death of Higby Harris the widow and her two daughters have lived upon the home place and have exercised dominion and control over the land devised. The plaintiffs assert that, al-

though the defendants have collected the rents, issues, and profits from the land, they have failed and refused to account to plaintiffs for their interests therein. Based upon a written statement of receipts and disbursements submitted by the defendants, the trial court decreed that defendants are indebted to the plaintiff Claude Harris in the sum of $435.41 and to the plaintiff Clyde H. Harris in the sum of $261.20. It was further decreed, in keeping with the holding of this court on former appeal (*Milton Warehouse Co. v. Basche-Sage Hdwe. Co.*, supra) that "defendants, nor either or any of them have any lien, claim, or right in, to or upon that portion of the crop for the year 1931, in storage at Milton, Oregon, belonging to Claude Harris, a plaintiff herein."

■ The main contention of the defendants on this appeal concerns the proper amount that each of the devisees and their successors in interest should pay as taxes. Defendants assert that Claude Harris and Clyde Harris should pay two-fifths of the taxes and expenses since they own two-fifths of the fee of the real property in question and that it was error for the trial court to require each of them to pay only one-tenth of the same. Such contention is predicated upon the theory that Laura Harris does not have a life estate under the provisions of the will. Counsel for appellants recognize the force and effect of the Milton Warehouse case but assert that error was committed by the court in holding that the surviving widow has a life estate in one-half of the income of the home place and by reason thereof is obliged to pay the taxes in accordance with such interest. We are satisfied that the conclusion of the court is sound and has become the law in the case. Indeed, the contention which counsel now makes that

the widow has no life estate is directly in conflict with that which he and his associate counsel set up in the partition suit. Neither do we think there is any conflict in the decisions rendered in the partition suit and the Milton Warehouse case.

■ Finally it is urged that the court erred in entering judgment against Martha Harris and Mabel Harris as they had nothing to do with the control or management of the wheat ranch. It is alleged, however, in the answer of the defendants that Laura Harris, Martha Harris, and Mabel Harris "have had a full and complete accounting between themselves covering the operation of the home place * * * and have had a complete settlement between themselves." In this accounting the interests of the plaintiffs, as established by our construction of the will, were ignored. Some of the funds which should have gone to the plaintiffs were distributed and divided among the defendants. Martha and Mabel having participated in the wrongful appropriation of such funds, it follows that no error was committed in entering judgment against them.

■ We see no other assignment of error which merits attention. The trial court accepted as a basis for the accounting the statement of receipts and disbursements rendered by defendants and they are in no position to complain if the figures submitted are erroneous, although we think the same are substantially correct.

The decree is affirmed. Each party will pay his own costs and disbursements.

ROSSMAN and KELLY, JJ., not sitting.